# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| ABEL REVILLA OCHOA<br>   Plaintiff,<br><br>v.<br><br>BRYAN COLLIER,<br>Executive Director,<br>Texas Department of Criminal Justice,<br><br>LORIE DAVIS,<br>Director, Correctional Institutions Division,<br>Texas Department of Criminal Justice,<br><br>MICHAEL BUTCHER,<br>Senior Warden, Polunsky Unit<br>Livingston, Texas,<br>   Defendants. | Civil Case No.<br><br><br><br>**DEATH PENALTY CASE**<br><br>**EXECUTION SCHEDULED FOR FEBRUARY 6, 2020** |

## COMPLAINT PURSUANT TO 42 U.S.C. § 1983

Paul E. Mansur
Attorney at Law
Texas Bar No. 00796078
P.O. Box 1300
Denver City, Texas 79323
(806) 592-2797
(806) 592-9136 (fax)
Paul@PaulMansurLaw.com

JASON D. HAWKINS
Federal Public Defender

Derek VerHagen (TX 24090535)
Jeremy Schepers (TX 24084578)

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
derek_verhagen@fd.org

# I.
# NATURE OF ACTION

1. Plaintiff faces imminent execution. He seeks to tell his story of remorse and redemption to the Texas Board of Pardons and Paroles and the Governor in the form of a filmed interview submitted with his clemency petition. This will allow him to speak to the clemency board directly and make a plea in his own voice to be spared the ultimate punishment.

2. Contrary to their own policy, Defendants refuse to allow Plaintiff's counsel to bring a videographer into the prison to film the interview without a court order—despite the fact that the videographer has passed TDCJ's own security background investigation.

3. Defendants' denial and interference with Plaintiff's development of his clemency petition stands in stark contrast to Defendants' lenient treatment of members of the media. The operative policy on media visits does not require a background check (much less a court order), and Defendants routinely allow media representatives, such as Dr. Phil and Netflix production teams, into the prison to film inmate interviews if they secure the consent of the inmate.

4. Defendants' denial of a filmed interview interferes with Plaintiff's access to courts and access to counsel, violates his rights under 18 U.S.C. § 3599, and denies him due process of law. Accordingly, Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to remedy these violations. Ultimately, Plaintiff requests this Court ensure that, on the eve of execution, a death row inmate's

counsel has at least as much access to the inmate as Dr. Phil, or any other media representative, would.

## II.
## JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because all Defendants reside or have business offices in the State of Texas and at least one Defendant resides or has business offices in this District.

## III.
## PARTIES

7. Abel Ochoa (999450) is a death-sentenced inmate under the supervision of the Texas Department of Criminal Justice ("TDCJ"). He is confined at the Polunsky Unit, located at 3872 FM 350 South, Livingston, Texas 77351.

8. Defendant Bryan Collier is the Executive Director of TDCJ. Collier is the commanding officer of all TDCJ employees and contractors and is responsible for their conduct. By law, he is responsible for protecting the constitutional rights of all persons and entities under TDCJ's supervision. He also has the authority to change TDCJ policy. Collier has business offices located at 861 B IH 45 North, Huntsville, Texas 77320.

9. Defendant Lorie Davis is the Director of TDCJ, Correctional Institutions Division. Davis is responsible for the supervision and administration of the state prison system and the execution of death warrants and has the authority

to change TDCJ policy. TDCJ lists Davis' address as P.O. Box 99, Huntsville, Texas 77342.

10. Defendant Michael Butcher is the senior warden of the Polunsky Unit of the TDCJ. Butcher oversees the Polunsky Unit and has decisionmaking power on certain issues under TDCJ's policies. Butcher has offices located at 3872 FM 350 South, Livingston, Texas 77351.

11. In all respects relevant to this action, Defendants are all state officials acting under color of state law. They are all sued in their individual and official capacities.

## IV.
## FACTS

### Background

12. Plaintiff Abel Ochoa was sentenced to death on April 23, 2003, following his conviction for capital murder in the 194th District Court of Dallas County, Texas. Mr. Ochoa challenged his conviction and sentence on direct appeal and in state and federal post-conviction proceedings.

13. On January 25, 2010, the United States District Court for the Northern District of Texas appointed Paul Mansur to serve as Mr. Ochoa's counsel throughout federal habeas proceedings and clemency, pursuant to 18 U.S.C. § 3599.

14. On February 28, 2018, the United States Court of Appeals for the Fifth Circuit appointed the Federal Public Defender's Office for the Northern District of Texas ("FPD") as co-counsel to represent Mr. Ochoa under 18 U.S.C. § 3599.

3

15. On October 7, 2019, Mr. Ochoa's initial federal habeas proceedings concluded when the United States Supreme Court denied his petition for writ of certiorari.

16. On September 24, 2019, the 194th District Court of Dallas County, Texas, set an execution date of February 6, 2020, for Mr. Ochoa. That execution date remains in place.

### Preparation for Clemency

17. With his appeals exhausted, Mr. Ochoa will seek a commutation of his death sentence from the Texas Board of Pardons and Paroles ("BPP") and the Governor of the State of Texas via the clemency process. Under the BPP's rules, Mr. Ochoa's clemency petition is due by January 16, 2020.

18. In support of Mr. Ochoa's clemency petition, the FPD retained a professional videographer, Doug Passon, and sought to conduct a video interview with Mr. Ochoa to present to the BPP with his petition for clemency.

19. Mr. Ochoa presents a particularly compelling case for commutation to a life sentence given his deep and sincere remorse for the crime for which he is convicted, his personal story of redemption, and his remarkable faith and relationship with God. A paper record is wholly inadequate to convey Mr. Ochoa's story of remorse and redemption.

20. TDCJ has policies permitting such videos to be filmed either by media or by an attorney or their designated representative. Appointed counsel began preparation for filming a video of Mr. Ochoa approximately two months before

his clemency petition was due, which would provide ample time to present such evidence as part of his clemency petition.

## TDCJ Visitation Policies for Legal Visits

21. Legal visits with TDCJ inmates are governed by Board Policy BP-03.81, Rules Governing Offender Access to the Courts, Counsel, and Public Officials. Ex. 1. To meet with a Texas death row inmate, counsel must submit a signed copy of form I-163, "Attorney Application to Visit TDCJ Offender," to the Inmate Records department of the Polunsky Unit in Livingston, Texas.

22. Counsel may also sponsor an approved representative to meet with an inmate. To do so, counsel must submit a form I-166, "Attorney Authorization for Approved Representative to Visit TDCJ Offender," to the Inmate Records department of the Polunsky Unit on behalf of the approved representative. The approved representative must also submit a form I-164, "Application to Visit TDCJ Offender as Attorney's Representative," to the Access to Courts department of TDCJ at least one week before the visit. The I-164 form requires the representative to disclose his date of birth, social security number, state driver license number, home address, place of employment, criminal history, citizenship, and relationship to any inmates currently incarcerated in any TDCJ unit, among other things. Access to Courts uses the information to conduct an "investigation" into the representative before approving his visit to a TDCJ unit as an approved representative of counsel. Once the representative's I-164 form has been approved by the Access to Courts

5

department and his I-166 form has been approved by the Inmate Records department, the representative may enter the prison to meet with the inmate.

23. Visits between inmates and counsel, or an approved representative, must take place on business days during business hours.

## TDCJ Policies for Media Visits

24. Visits between TDCJ inmates and media representatives are governed by the Executive Directive on News Media Relations ("Executive Directive"), effective March 27, 2017, Ex. 2, and TDCJ's Media Policies and Guidelines for Offender Interviews ("Media Policies and Guidelines"), Ex. 3.

25. Media visits are coordinated through the TDCJ Public Information Office. Neither the Executive Directive nor the Media Policies and Guidelines require media representatives to submit any specific forms or undergo a background check before entering the prison to meet with an inmate. Media representatives need only obtain written consent from the inmate and submit a written request to visit, on the media organization's letterhead, to the Public Information Office approximately 24-48 hours before the visit. Visits between death row inmates and media representatives must take place between 1:00 p.m. and 3:00 p.m. on a Wednesday, and the visits are limited to one hour in length. Legal and family visits are not allowed with death row inmates during this time.

26. Under the Executive Directive, "[m]edia access is considered distinct from other forms of access to offenders . . . ." Therefore, a media representative may not be

6

on an inmate's visitation list, and the inmate's attorneys and family members may not be present during the media interview.

### TDCJ Policies for Camera Equipment: Media

27. There are two ways to bring camera equipment into a TDCJ facility under its policies: (1) as a member of the media; or (2) as a member of the legal team for the inmate with approval of the Warden's office.

28. The process for media to conduct a filmed interview with death row inmates is simple. The Executive Directive creates no additional requirements for media to bring in camera equipment beyond the requirements for entering the prison. TDCJ's Media Policies and Guidelines presume that a media representative may bring in "camera equipment," listing no additional requirements, other than to require members of the camera crew to have valid photo identification.

29. The result is that TDCJ routinely allows members of the media to bring camera equipment into the Polunsky Unit to conduct filmed interviews with death row inmates. There are numerous examples of such footage in the media, including interviews by Chris Hayes (*All in with Chris Hayes*) and Warner Herzog (*Into the Abyss*). The BBC filmed multiple episodes of its *Life and Death Row* series at the Polunsky Unit, as did Netflix for its *I Am a Killer* series.

30. In a recent example, TDCJ allowed Dr. Phil McGraw, host of the television show *Dr. Phil*, to enter the Polunsky Unit with camera equipment and conduct a filmed interview with a death row inmate with a pending execution date. The two-part episode, which aired on October 10-11, 2019, showed footage of Dr.

7

Phil going through security at the front enterance of the Polunsky Unit, getting a pat-down as part of the security check, and interviewing the death row inmate inside the prison.[1]



---

[1] The photographs provided in this section are screenshots taken from online videos that can be found at:
https://www.youtube.com/watch?v=EP96WgwTOwM&feature=emb_title and
https://www.youtube.com/watch?v=yuL5vKWPJCc&feature=emb_title

8





9



31. For each example, TDCJ's current policies would require only that the media representative obtain written consent from the inmate and submit a visit request 24-48 hours before the visit.

### TDCJ Policies for Camera Equipment: Legal Team

32. TDCJ policy also ostensibly allows the legal team to bring in camera equipment for legal visits under Board Policy BP-03.81, Rules Governing Offender Access to the Courts, Counsel, and Public Officials. To do so, counsel must provide the "warden or designee" with a justifiable reason for bringing in the equipment and attest that the use of the equipment is absolutely essential to facilitate the attorney-client relationship. The policy does not specificy that a court order is required.

### Plaintiff's Attempt to Secure Filmed Interview

33. In pursuit of Mr. Ochoa's effort to produce a clemency video to submit to the BPP, on or about November 20, 2019, the FPD contacted TDCJ's Public

10

Information Office to inquire about getting the videographer approved to video Mr. Ochoa under TDCJ's media policies. A secretary at the Public Information Office transferred the call to Jeremy Desel, the Director of Communications for TDCJ. The FPD explained the videographer's role in producing the clemency video to Mr. Desel, and Mr. Desel indicated that he was unsure of the best way to proceed under the circumstances. Mr. Desel indicated that he would speak with his colleagues to see if they had suggestions about the best way to handle the issue and would call the FPD back shortly.

34. Mr. Desel did not immediately return the FPD's call. On November 25, 2019, the FPD left a message for Mr. Desel requesting an update on his consultation with colleagues regarding the videographer.

35. Mr. Desel again did not return the FPD's call. On December 4, 2019, the FPD again called Mr. Desel. At this time, Mr. Desel informed the FPD he could not coordinate the videographer's visit with Mr. Ochoa through TDCJ's Public Information Office because the videographer would be considered a member of the legal team, and suggested the FPD contact the Warden's office at the Polunsky Unit to make the request.

36. Under the operative policies, had the Public Information Office recognized Mr. Ochoa's videographer as a media representative, the videographer would have needed only to secure written consent from Mr. Ochoa and submit a request to the Public Information Office 24-48 hours before the interview. Moreover, through that process, it would have been presumed that the videographer could

11

bring camera equipment into the prison to interview Mr. Ochoa. But that was not allowed.

37. Later, on December 4, 2019, the FPD contacted the office of Warden Michael Butcher ("Warden's office") at the Polunsky Unit to inquire about the videographer filming an interview with Mr. Ochoa. The Warden's office informed the FPD that the request should be submitted through Inmate Records, and transferred the call to that department. An Inmate Records employee named "Ms. Daniel" informed the FPD that the FPD should contact the Access to Courts department and submit a formal request to have the videographer approved as a representative of the legal team, using TDCJ form I-164. Ms. Daniel stated that once the videographer was approved by Access to Courts, the FPD should submit a separate visit request to Inmate Records, via form I-166, enumerating the items that the videographer needed to bring into the prison for his visit with Mr. Ochoa.

38. Later that same day, December 4, 2019, the FPD submitted the formal request to Access to Courts, using form I-164. Additionally, the FPD called Access to Courts and spoke with Jennifer Farrow-Chavez, Library Assistant III. The FPD explained the purpose of the videographer's requested visit. At that time, Ms. Farrow-Chavez informed the FPD that her interpretation of TDCJ policies was that members of the legal team would not be allowed to bring video equipment into the prison without a court order.

39. On December 6, 2019, the FPD called Access to Courts to request an update on TDCJ's background investigation into the videographer under his I-164 formal request for approval to visit the prison. Ms. Farrow-Chavez was out of the office that day, and her colleagues could not provide an update on the application.

40. On December 9, 2019, still without word on whether the videographer had passed the background investigation, the FPD submitted an I-166 visit request to Inmate Records, pending the outcome of Access to Courts' investigation. The FPD attached to the visit request a letter, on office letterhead, requesting that the Warden or his designee allow the videographer to bring camera equipment into the prison for his December 12, 2019, visit to film an interview for Mr. Ochoa's clemency petition. Ex. 4. Consistent with the requirements of TDCJ Board Policy BP-03.81, the FPD attested that the use of the camera equipment was absolutely essential to facilitate the attorney-client relationship. *Id.*

41. On December 11, 2019, Ms. Chavez-Farrow of the Access to Courts department contacted the FPD to advise that the videographer had passed the background check and was approved to enter the prison the following day, but that he would not be allowed to bring in camera equipment, as that is "only allowed for a deposition." Ms. Chavez-Farrow did not claim to be acting as the Warden's designee with regard to the decision to deny the camera equipment.

42. Later that same day, Ms. Daniel of the Inmate Records department informed the FPD that the Warden's office approved the videographer's I-166 request to enter the prison, but denied the request to bring camera equipment into the

13

prison absent a court order. Ms. Daniel refused to provide written confirmation of the denial of the camera equipment.

43. On December 17, 2019, the FPD contacted Ms. Daniel of the Inmate Records department to inquire about appealing the Warden's decision to deny the camera equipment. Ms. Daniel informed the FPD there is no process to appeal the Warden's decision and reiterated that no camera equipment would be allowed into the prison without a court order.

44. The Defendants' actions in refusing to allow members of the legal team to bring in camera equipment without the intervention of a court order is contrary to their official policy, which permits the Warden to authorize such equipment during a legal visit.

## **Defendants Frustrated and Impeded Mr. Ochoa's Plea for Clemency**

45. The clemency process is a critical part of the justice system. The United States Supreme Court has recognized clemency as an essential failsafe in death penalty cases. Clemency is the appropriate—and sometimes *only*—method for remedying injustices that may persist after a case has made its way through the appellate process.

46. Mr. Ochoa presents a particularly compelling case for commutation to a life sentence given his deep and sincere remorse for the crime for which he is convicted, his personal story of redemption, and his remarkable faith and relationship with God. Mr. Ochoa has made great efforts to make a positive influence on other inmates, correctional officers, and others he has

encountered during his 16 years on death row. He speaks in an eloquent and vulnerable manner about the greatest mistake of his life and his daily struggle for redemption—which he recognizes would not be possible without his sincere faith in God.

47. With his execution date fast approaching, Mr. Ochoa sought to personally present this information to the BPP and the Governor in the form of a filmed interview but the Defendants have interfered with his ability to do so. The Defendants' denial of Mr. Ochoa's request to conduct a filmed interview has frustrated and impeded his plea for clemency, and as a result Mr. Ochoa suffered an actual injury in not being able to present this video as part of his clemency petition.

48. The Defendant's actions described above were intentional.

## V.
## CLAIMS

### Count I: Access to Courts

49. Mr. Ochoa incorporates by reference each and every statement and allegation set forth throughout this Complaint as if fully set forth herein.

50. By virtue of the above stated facts, the Defendants have deprived Mr. Ochoa of his First and Fourteenth Amendment rights to access the courts, in violation of 42 U.S.C. § 1983.

### Count II: Access to Counsel

51. Mr. Ochoa incorporates by reference each and every statement and allegation set forth throughout this Complaint as if fully set forth herein.

15

52. By virtue of the above stated facts, the Defendants have obstructed the availability of professional representation guaranteed by 18 U.S.C. § 3599, in violation of 42 U.S.C. § 1983.

### Count III: Due Process

53. Mr. Ochoa incorporates by reference each and every statement allegation set forth throughout this Complaint as if fully set forth herein.

54. By virtue of the above stated facts, the Defendants have deprived Mr. Ochoa of his constitutional right to due process of law by interfering with the clemency process.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this Court grant him the following relief:

1. Order the Defendants to allow Mr. Ochoa's retained videographer to enter the Polunsky Unit with a video camera and conduct a filmed interview with Mr. Ochoa to submit as part of his clemency petition;

2. Enjoin the Defendants from executing Mr. Ochoa during the pendency of this lawsuit;

3. Declare any TDCJ's video camera policies that favor media representatives over legal counsel, whether *de facto* or *de jure*, unconstitutional or in violation of federal law;

4. Enjoin Defendants from creating or enforcing policies that provide media representatives greater access to inmates than the inmates' own counsel;

5. Order Defendants to create accommodations and policies for legal counsel to film inmates that provide at least as much access to inmates as the accommodations applied to members of the media;

6. Order other preliminary and permanent injunctive and declaratory relief as necessary to enforce Mr. Ochoa's constitutional rights; and

7.    Grant any other such relief as this Court deems just and proper.

Respectfully submitted,

DATE: December 23, 2019

| | |
|---|---|
| Paul E. Mansur<br>Attorney at Law<br>Texas Bar No. 00796078<br>P.O. Box 1300<br>Denver City, Texas 79323<br>(806) 592-2797<br>(806) 592-9136 (fax)<br>Paul@PaulMansurLaw.com | JASON D. HAWKINS<br>Federal Public Defender<br><br>*/s/ Derek VerHagen*<br>Derek VerHagen (TX 24090535)<br>Assistant Federal Public Defender<br><br>*/s/ Jeremy Schepers*<br>Jeremy Schepers (TX 24084578)<br>Supervisor, Capital Habeas Unit<br><br>Office of the Federal Public Defender<br>Northern District of Texas<br>525 S. Griffin St., Ste. 629<br>Dallas, TX 75202<br>214-767-2746<br>214-767-2886 (fax)<br>derek_verhagen@fd.org<br>jeremy_schepers@fd.org<br><br>*Counsel for Plaintiff* |

## CERTIFICATE OF SERVICE

    I hereby certify that on December 23, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States Court for the Southern District of Texas using the electronic case-filing (ECF) system of the Court. I have also provided a copy of this document to counsel for the Defendants, the Office of the Attorney General.

                                        */s/ Jeremy Schepers*
                                        Jeremy Schepers